# MIDDLESEX COUNTY.

## COMMONWEALTH *vs.* HERMAN HAUPT.

The Commonwealth undertook to aid a railroad corporation by the issue of scrip upon certain terms and conditions, for the sum of $2,000,000, payable in thirty years from date, " which may be expressed in the currency of Great Britain and payable to the bearer in London, or issued in federal currency, payable in Boston, as the directors of the corporation might elect when they should apply for each issue of the scrip." The corporation agreed with contractors that the whole of the state scrip that might be issued should be exclusively appropriated to work done or to be done, in compliance with the terms and conditions of the legislative act authorizing the loan of state credit, and that the same should be promptly handed to the contractors. The corporation accordingly from time to time gave orders for the delivery of the scrip to the contractors, who elected to receive it in the currency of Great Britain, and in ascertaining the amounts each pound sterling was reckoned at $4.44, and the scrip was issued on that basis, upon orders of the governor and council and certificates of the state engineer, which were expressed in dollars. During all this time the equivalent in this market for a pound sterling was about $4.91. The contractors sold the scrip for less than its par value. *Held*, that the Commonwealth might maintain an action for money had and received against the contractors, to recover back the excess received by them upon the sale of the scrip, over the amount at which it was reckoned when it was issued.

If a contract is made to give obligations for a certain sum of money, which at the election of the party who is to receive it may be expressed in the currency of Great Britain, and no standard is agreed upon by the parties at which the pound sterling shall be reckoned, it should be reckoned at $4.84.

CONTRACT for money had and received by the defendant to the plaintiffs' use. The case was submitted to the court upon the following facts:

The Commonwealth of Massachusetts agreed to lend its credit to the Troy and Greenfield Railroad Corporation, to an amount, for the purposes, and upon the conditions, specified in *St.* 1854, *c.* 226, and the subsequent acts in amendment thereof which may be referred to. Under the provisions of these acts the state scrip to be delivered from time to time to said corporation, as it should become due, was to be expressed either in federal currency, payable in Boston, or in the currency of Grea. Britain, payable in London, as the corporation should elect. On the 18th day of February 1858, the corporation made a contract with the defendant and his associates for the construc tion of said railroad, and agreed to deliver to them, as part of

their compensation, any state scrip that might at any time be delivered to the treasurer of the company. In pursuance of the terms of this contract, and upon the filing of the certificates required by the acts aforesaid of the amounts of scrip due from the Commonwealth to the corporation, which certificates were expressed in dollars and cents, and upon the filing of written orders from the treasurer of the corporation, scrip was delivered by the Commonwealth to the defendant or his order, expressed in the sterling currency of Great Britain, the defendant having elected and requested to receive the same in sterling instead of federal currency, at various times from the 6th of October 1858 to the 7th of March 1861, to the amount in all of £114,500, and each pound sterling was reckoned at four dollars and forty-four cents. This scrip was issued upon orders of the governor and council, and certificates of the state engineer, which were expressed in dollars and cents, and were of the amount of $508,507; and upon orders of the treasurer of the corporation was delivered to the defendant. During the whole period within which the several deliveries of sterling scrip were made to the defendant as aforesaid, the equivalent in this market for a pound sterling was more than four dollars and forty-four cents, and about four dollars and ninety-one cents in gold coin of the currency of the United States; and if the exact equivalent is material, it may be ascertained by an assessor.

The Commonwealth contended that each pound sterling ought to have been computed at its equivalent in this market, and that there has been an over payment, which may be recovered back in this suit. The defendant contended that there has been no over payment, and that the claim of the Commonwealth, if any, is against the Troy and Greenfield Railroad Company.

The defendant allowed to the Troy and Greenfield Railroad Company the same sum the bonds were taken for by the company of the Commonwealth. A mortgage was executed by the railroad company to the Commonwealth, according to the provisions of the act referred to.

It was also claimed to be a fact by the defendant that he sold

the sterling bonds delivered to him, after using due diligence to obtain the highest price, at less than their par value; and it was agreed that this fact should be found by an assessor if material; and that, if the action can be maintained, the case should be submitted to an assessor to find the amount for which judgment should be rendered.

*D. Foster*, for the Commonwealth. It was a plain mistake to compute the pound sterling at $4.44. This was originally its custom-house value. *St.* of U. S. of 1799, *c.* 22, § 61. By *St.* of U. S. of 1842, *c.* 66, § 1, this was changed to $4.84. There is no statute fixing the value of pounds sterling. The above statutes only fix the rate for the payment of duties. Formerly English coins were a legal tender by weight, but ceased to be so by *St.* of U. S. of 1857, *c.* 56, § 3. At present there is no foundation for the assumption that the true value of the pound sterling is $4.44. See *Schermerhorn* v. *Talman*, 14 N. Y. 93. There was, therefore, an over payment. The statute fixed the sum in dollars; and the officer, in computing the sum at which it should be expressed in pounds, made a mistake. This was a mistake of fact. The defendant might have been enjoined in equity from negotiating the excess. Having negotiated it, he is liable to refund the amount received. *Cox* v. *Prentice*, 3 M. & S. 349. *Baltimore &c. Railroad* v. *Faunce*, 6 Gill, Md. 68. *Johnson* v. *Rutherford*, 10 Penn. State R. 455. *Boyer* v. *Pack*, 2 Denio, 107 The action is properly brought against the defendant, instead of the company. *Jefts* v. *York*, 10 Cush. 392. *Appleton Bank* v *McGilvray*, 4 Gray, 518. An action for money had and received is the proper remedy.

*J. G. Abbott & G. B. Perry*, for the defendant. There is nc privity between the Commonwealth and the defendant. The statutes provide for a delivery of the scrip to the railroad com pany; and the railroad company were to secure the Commonwealth therefor by a bond and mortgage, which they accordingly did. The corporation became entitled to receive the scrip. There was no contract between the Commonwealth and the defendant. No payment was made to him. He in no way contributed to the mistake, if there was one. He merely received the scrip in

payment of a debt due to him from the corporation, and disposed of it before any notice was given of a mistake. If there is any liability to refund, it is on the part of the corporation.

But there is no such liability. There was no mistake. It may be conceded that there is no law fixing the rate of reckoning the pound sterling. Its value changed from day to day. It was necessary for some one to fix the value. It was made the duty of the treasurer of the Commonwealth to do it. There was no law to guide him. He knew all the facts. There was no concealment or misapprehension. If there was an error, it was an error of judgment, for which nobody is liable. But there was no error. The treasurer followed the rule adopted under like circumstances in the case of the Western Railroad Company, and the provisions of the federal law. Besides, by *St.* 1860, *c.* 202, the deliveries which had then been made were recognized as proper, and thus sanctioned and ratified.

The Commonwealth have advanced nothing but promises, and the railroad company assume to pay these promises, and indemnify the Commonwealth. It does not appear that the Commonwealth will even be called on to pay the scrip. An action cannot be maintained to recover back money paid by mistake, where no money has been paid, and perhaps never will be. *Nightingal* v. *Devisme*, 5 Burr. 2589. At least a demand should have been made before bringing the action.

HOAR, J. This suit is an interesting and important one from the nature of the questions which arise in it, and from the large amount of property involved; but its decision depends upon the just application of familiar principles. It is brought to recover the value of a certain scrip issued by the Commonwealth in aid of the construction of the Troy and Greenfield Railroad; which it is now claimed was delivered to the defendant by mistake, and has been converted into money by him. By the provisions of *St.* 1854, *c.* 226, confirmed and modified by *Sts.* 1859, *c.* 117, and 1860, *c.* 202, the treasurer of the Commonwealth was " authorized and instructed to issue scrip in the name and behalf of the Commonwealth, for the sum of two millions of dollars, which may be expressed in the currency of Great Britain, and

**may** be payable to the bearer thereof in London," " or the said scrip may be issued in federal currency, payable in Boston, as the directors of the Troy and Greenfield Railroad Company shall elect, when they apply for each and every issue of said scrip;" and to deliver the same to the treasurer of the company from time to time, in sums proportioned to the progress of the work of constructing the railroad and tunnel, ascertained and certified under the conditions prescribed in the several statutes. By the contract which the railroad company made with the defendant for the construction of the road and tunnel, he was to receive all the scrip which should be issued by the Commonwealth, and orders were drawn for its delivery to him from time to time as it became due. The amount for which the scrip was to be issued was ascertained and fixed in federal currency; and the election was made to receive it in each case in scrip to be " expressed in the currency of Great Britain, and payable in London." In changing the sum from federal currency to the currency of Great Britain, the treasurer of the Commonwealth reckoned the pound sterling as equivalent in value to four dollars and forty-four cents of federal currency, and delivered to the defendant from time to time amounts of scrip ascertained upon that basis of computation. The defendant allowed to the railroad company the several sums for which the scrip was taken of the Commonwealth; and converted the bonds into cash for the best price he could obtain in the market, which he avers was less than their par value.

The first question is, was there a delivery of property to the defendant by mistake, to which he was not entitled, and which he received without consideration? Upon this question we can have no doubt. The duty of the treasurer, acting on behalf of the Commonwealth, was simply ministerial, and precisely defined by law. He was to compute the equivalent of a certain number of dollars in pounds sterling, and to issue scrip for the number of pounds thus ascertained. If by a mistake in computation he issued scrip for more than such an equivalent, he exceeded his authority. He had no right to deliver the excess, and the defendant had no right to receive it. The basis of computation was equally open and known to both. If it was

**err**oneous, and the defendant knew it, it was a fraudulent act on his pa**r**t to accept the excessive amount.    If he did not perceive the error, it was a case of mutual mistake.

But the defendant denies that there was any error; and new contends that there is no legal standard by which the relative value of a pound sterling and a dollar is fixed in this common-wealth; that it was a matter of estimate, to be determined by the treasurer, or by agreement of both parties; and having once been settled in good faith, is not afterward to be disturbed.

It is a sufficient answer to this proposition, that whatever may be the just standard of comparison between the two currencies, and however it is to be ascertained, it is apparent that one was adopted which was wholly inadequate and erroneous.    The parties agree that during the whole period within which the deliveries of sterling scrip were made to the defendant, the equivalent for the pound sterling in this market was more than four dollars and forty-four cents.    The value affixed to the gold sovereign of England, which is the coin representing the pound sterling, by the law of the United States, in payments to or by the treasury, and in appraising merchandise at the custom-house, was then and still is four dollars and eighty-four cents. *St.* of U. S. of 1842, *c.* 66.    5 U. S. Sts. at Large, 496.    Before the year 1857 gold sovereigns were a legal tender by weight, at a rate fixed by law in proportion to their fineness, as determined by an annual assay at the mint.    By the *St.* of U. S. of 1857, *c.* 56, all acts authorizing the currency of foreign gold and silver coins, and making them a legal tender in payment of debts, were repealed; but the director of the mint was required to cause assays of them to be made from time to time, to deter-mine their average weight, fineness and value, and to embrace n his annual report a statement of the results thereof.    11 U. S. Sts. at Large, 163.    The annual report of the director, in obedi ence to this law, has shown the average value of the English gold sovereign, as compared with our own gold coin, to be $4.84.48; and the average value at which they are taken at the mint for recoinage, to be $4.82.06.    The current price of sover-eigns in the money market, usually somewhat higher, is affected

by the temporary demand for them and by the rates of exchange. It is manifest, therefore, that the treasurer did not correctly express in the currency of Great Britain the number of dollars in scrip which he was authorized to deliver, and which the defendant asked him to deliver. By a misapprehension of his duty, he made the sum grossly excessive. He adopted as the basis of calculation a sum which had no legal or commercial relation to the computation to be made. He took what is called among merchants and bankers " the par of exchange," a current phrase which has no other meaning than the value of the pound sterling formerly fixed by law for purposes of revenue. But the statute under which he was acting no more contemplated such an arbitrary and conventional standard, than it did the mere numeral transfer from one currency to the other, dollar for pound.

We do not see that the mistake under which these parties acted was substantially different in its nature or legal consequences from that which occurs when there is an agreement to deliver a certain quantity of an article, and a wrong measure is used ; as if, for example, a measuring tape were taken, one side of which was divided into the surveyor's measurement of chain and links, and the other into feet; and the links were to be applied in ascertaining the quantity, supposing them to be feet.. Or perhaps a nearer analogy would arise if the treasurer had mistaken the pound sterling for the pound which was once a unit of value in this commonwealth, of twenty shillings, of which six were equivalent to the federal dollar.

We do not think the rate of exchange was to be considered, because, although the scrip was payable in London, it was not to be paid for thirty years ; and there could be no means of determining what difference in value the difference in exchange would produce at the end of that time. The election given to the company to take the same sum either in federal currency or in that of Great Britain may, besides, give some countenance to the presumption that the legislature intended to give them the advantage, if any there were, which the fluctuations in exchange might occasion.

That money paid or property delivered, under a mutual mistake, may be recovered back in a proper form of action, between proper parties, is a principle of law so elementary and well settled that it hardly needs the citation of authorities. *Appleton Bank* v. *McGilvray*, 4 Gray, 578. *Cox* v. *Prentice*, 3 M. & S. 344. In *Bayer* v. *Pack*, 2 Denio, 107, the mistake was made by a person employed to cast the interest on a bond, who made annual rests, and thus computed interest upon interest; and both parties took his computation as accurate; but it was held that the over payment might be recovered back.

The next ground taken in defence is that the Commonwealth have suffered nothing by the mistake, because they have merely issued promises to pay, and it is not to be presumed that they will ever be called on to pay anything, because they have the indemnity of the railroad company. But we cannot see how the railroad company can be held liable to pay for scrip which was issued to their contractor by mistake; which they had not authorized him to receive; which was not due to them under the contract with the Commonwealth; and which has not gone to their use. The excess has gone to the defendant's use, without diminishing the amount which the Commonwealth is under obligations to advance, as the work goes on hereafter.

Where money has been paid by mistake it may be recovered back in an action for money had and received to the plaintiff's use. And although the person who receives it may be only an agent, the action may be maintained against him if he has not paid it over to his principal or otherwise altered his situation respecting it before he has notice of the error. If a man sent his servant to a bank with a check for a hundred dollars in payment of his wages, and the cashier, by mistake, should pay out eleven ten dollar bills, the bank could certainly recover back the ten dollars overpaid, in an action against the servant.

But the objection is made that this form of action, for money had and received, will not lie for anything but money, and that the bonds which were issued were not money, but only evidences of debt. The obvious answer is, that the defendant acquired no property in the bonds which were delivered to him in excess of

the amount to which he was entitled. It would have been his duty to return them, if they had been demanded of him before he disposed of them. The essence of the transaction is, that he has received by mistake obligations of the state which he has converted into money. They were not his; and the money he has received for them was money received to the use of the party whose property he sold, having received it without consideration under a mistake of computation. If the defendant is right in supposing that, if he had not sold them, the action would have been in the nature of trover, and a demand necessary before bringing the action; yet, having sold them, the owner may waive the tort, ratify the sale, and maintain an action for money had and received for the proceeds. *Lamine* v. *Dorrell*, 2 Ld. Raym. 1216.

The case will therefore be sent to an assessor, according to the agreement of the parties, to determine how much scrip was delivered to the defendant by mistake. To ascertain this it will be necessary to decide at what rate the pound sterling should have been computed as an equivalent to federal currency. In *Adams* v. *Cordis*, 8 Pick. 260, where a trustee was charged in a suit here for a debt to be paid in England, " the par of exchange," that is, the rate at which the pound sterling was reckoned at the custom-house under the existing law of the United States, was taken by the court as the standard for estimating in federal currency the debt which was due in pounds sterling. And nothing was allowed in addition for exchange in computing the damages. And in the recent case of *Otis* v. *Coffin*, 7 Gray, 511, decided in 1856, where it appeared that money invested in this country was ordered by a testator to accumulate until it amounted to £20,000, the court decided that it should be computed at $4.44 to the pound, and was therefore to be fixed at $88,888.88, [$88,800.00,] and no more. The will was made in 1839, and the testator died the same year, before the statute fixing the custom-house value of the pound sterling at $4.84 was passed. The counsel for one of the parties claimed that " the established par of exchange, $4.44, ' should be taken as the measure of the pound sterling, and nothing appears to have been

said to the contrary by the other counsel in the cause, nor was the change in the value for revenue purposes made by the statute of 1842 alluded to by the counsel or the court. Applying the doctrine of these cases, we think it must be regarded as the rule judicially adopted, to take as the value of the pound sterling where no standard has been agreed on, the value at which it is provided by law that it shall be taken and paid at the national treasury. The assessor will therefore fix the pound sterling at $4.84.

The value of the pound sterling, in calculating the rates of duties, was fixed at four dollars and eighty cents by *St.* 1832, *c.* 227, § 16. The *St.* of 1842, *c.* 66, § 1, fixing it at $4.84 for all purposes of revenue and of payments to and from the treasury, followed somewhat tardily the change in the value of our national gold coinage, which took effect July 31st 1834; and appears to have been occasioned by it. The true par of exchange between two countries is the equivalent of a certain amount of the currency of the one in the currency of the other, supposing the currency of both to be of the precise weight and purity fixed by their respective mints. McCulloch's Com. Dict. tit. Par of Exchange. Or in another form, it is the amount which the standard coin of either country would produce when coined at the mint of the other. Measured by this rule, the value of the pound sterling varies very little from the value given it by the United States for purposes of revenue and treasury payments; and the value of $4.84 may therefore be adopted as the rule in courts of justice with results substantially equitable.

The excess of scrip issued being ascertained upon this basis of computation, the Commonwealth will be entitled to recover the sum for which it was sold by the defendant, with interest from the date of the writ. In an action for money had and received, the commencement of the suit is a sufficient demand.